Herbert A. Posner, J.
Is there a place for "Mercy” in the Civil Courts of this State; or does justice require the Judge to observe the strict letter of the law under all circumstances? As Portia stated, in possibly the best-known passage in all of Shakespeare’s plays: "The quality of mercy is not strained, it droppeth as the gentle rain from heaven upon the place beneath. It is twice blest — it blesseth him that gives and him that takes. 'Tis mightiest in the mightiest. It becomes the throned monarch better than his crown. His sceptre shows the force of temporal power, the attribute to awe and majesty; wherein doth sit the dread and fear of kings; but mercy is above this sceptred sway. It is enthroned in the hearts of kings; It is an attribute to God himself; and earthly power doth then show likest God’s — when mercy seasons justice” (Merchant of Venice, act IV, scene 1).
This is a motion in a summary proceeding, by respondent tenant to stay a warrant of eviction obtained by petitioner landlord as a result of tenant’s default on a stipulation entered into between the parties, before this court, on December 10, 1976. TKU-Queens Corp. is the owner of Queens Center *49 Mall, Elmhurst, perhaps the largest commercial enterprise of its kind in Queens County. The shopping center consists of two large stores, A&S Department Stores and Ohrbach’s Department Store, plus over 60 smaller stores, including the respondent, Mabel Food Corp. Leonard Cohen, the sole owner of the respondent corporation filed an affidavit, with the motion, stating the following:
1. Tenant commenced its business operations in November, 1974 under a lease expiring in 1989.
2. Tenant expended approximately $60,000 in leasehold improvements before commencing operations. In addition $90,-000 was borrowed from the Small Business Administration, with both Mr. Cohen and his wife personally liable on said loan.
3. The summary proceeding herein was one for eviction for nonpayment of rent. When it came on for trial, it was settled by stipulation pursuant to which the tenant was to pay the landlord for all rents in dispute up to and including December 31, 1976 the sum of $39,158.30 in the following manner:
December 14, 1976 — $4,046.93
December 17, 1976 — $10,953.07
January 24, 1977 — $24,158.30
and in addition, the tenant was to pay current rent for the month of January in the amount of $4,046.93.
4. That by February, 1977 the tenant had paid everything but the last installment of $24,158.30, whereupon landlord obtained a warrant of eviction which was noticed to be executed by a- city marshal. Tenant moved to vacate the warrant and to extend its time to make the aforesaid payment of $24,158.30. (Note: this court granted this motion, in the interests of justice, after what amounted to an implied consent by the attorney for the landlord.)
5. The tenant has received a 30-day commitment for a $33,000 loan which should net it over $27,000 — more than enough to pay the judgment. Since this loan is to be conditioned upon a second mortgage of the Cohen family’s residence, a letter from the City Title Insurance Company was produced to show that the parties are proceeding with due diligence to raise the necessary moneys. Unfortunately, the "best laid plans of mice and men gang aft agley” (Robert Burns); and the tenant now pleads for a few more weeks to be able to raise the needed funds.
*50 6. The 30-day loan commitment (by the Scarsdale Funding Co.) expires March 25; therefore, that is the outside date.
7. Finally, that the Cohen family’s entire assets are tied up in this business or pledged to the SBA loan. Accordingly, if this court does not grant relief, it will result in the financial ruin of Mr. and Mrs. Cohen and their two teenage sons. The landlord, on the other hand, is not prejudiced since it is receiving current rent and in the event of eventual default, would take over possession of a 21A-year-old business worth more than $100,000. (Four times the judgment due.)
To sum up the facts and the issue of law: (1) the landlord claims his right of forfeiture (not a "pound of flesh” but to the Cohens the next best thing — their economic ruin) pursuant to the stipulation (the unbreakable "bond”) of December 10, 1976. (2) Any payment after January 24, 1977, is unacceptable and no statute or action of this court ("There is no power in Venice can alter a decree established”) can provide relief.
It would greatly sadden this court to believe that in this enlightened age, the rigid and harsh results called for by the petitioner were in fact the law of this State (or for that matter, any State in this great Nation). Fortunately, faith and research belie the accuracy of petitioner’s contention. Both the Legislature and the courts of this State have wisely preserved this court’s inherent right to dispense justice mercifully.
Section 212 of the New York City Civil Court Act provides "In the exercise of its jurisdiction the court shall have all the powers that the supreme court would have in like actions and proceedings.” CPLR 2201 provides, "Except where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just. ” (Emphasis supplied.) In 203 E. 13th St. Corp. v Lechycky (67 Misc 2d 451), the court held that a summary proceeding remains pending until the execution of the warrant, and while the proceeding is pending, the warrant may be stayed under CPLR 2201. In Matter of Macleod v Shapiro (20 AD2d 424, 427), the Appellate Division, First Department, was "forced to conclude” that the Civil Court Judge had the power to issue a stay (citing CCA, § 212; CPLR 2201), though in that case the Judge abused his discretion. The court said (p 428), "It has been held that a stay may be granted in summary proceedings for a 'reasonable time’ (Spot *51 less Stores v. Smith, 279 App. Div. 26)”, but five months was "not a reasonable time.” (Note: in this case the time is two months.)
Although this is a commercial nonpayment proceeding, the courts have held in holdover proceedings that the court in the exercise of its inherent discretionary powers may, where the circumstances warrant it, grant a reasonable stay in the interests of justice (Matter of Pepsi-Cola Metropolitan Bottling Co. v Miller, 50 Misc 2d 40).
In Third City Corp. v Lee (41 AD2d 611, 612), the Appellate Division went even further by saying, "we agree with the courts below that the Civil Court may grant relief, in appropriate circumstances, from its own judgments or orders (CCA, § 212; CPLR 5015), even after execution of a warrant”.
Petitioner relies primarily on the thrust of the decision (and all subsequent cases) in Matter of Malloy (278 NY 429, 433), in which the court stated, " 'Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional rights/ ” Ironically, this court agrees wholeheartedly with the logic and thrust of this decision. However, it does not apply to the case at hand. The relief that the respondent asks for in no way lessens the liability it assumed under the stipulation. It still owes the petitioner the judgment it consented to. By granting the respondent additional time to pay the judgment, the court is not prejudicing the landlord by even one cent. As a condition for the two stays (each for 30 days), the court has insisted that the tenant pay current rent of over $4,000 per month, which the landlord has in fact received for January, February and March. If the tenant does not pay the balance of the judgment by March 25, what has the landlord lost? Nothing, because he has collected current rent and takes possession of a leasehold that is worth many times in excess of the amount due. To the contrary, if the stay was not granted on January 24, the landlord would have been unduly enriched. Is that justice?
Based upon all the facts and the law, this court exercises its inherent discretion in the interests of justice, by granting the respondent a stay of execution of the warrant of eviction until March 25, 1977.